BEFORE THE SECOND DIVISION, MAY 17, 1946

**No. 51130.**—Protest 108306–K of Jack Schaefer & Associates (Los Angeles).

TILSON, Judge: By this suit against the United States, plaintiff seeks to recover certain sums of money alleged to have been illegally exacted upon certain imported merchandise.

The collector classified the merchandise under paragraph 363, Tariff Act of 1930, which provides for:

Sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal,

and accordingly assessed duty thereon at the rate of 50 percent ad valorem.

The plaintiff claims said merchandise to be properly classifiable under paragraph 355, Tariff Act of 1930, as amended by the trade agreement with the United Kingdom, T. D. 49753, which, so far as here pertinent, provides for:

* * * hunting * * * and similar knives * * * all the foregoing, finished or unfinished, not specially provided for, with handles of * * * deer or other animal horn, 8 cents each and 25 per centum ad valorem.

It was agreed at the trial that "* * * the articles are made with horn handles and are in chief value of steel." Samples of the merchandise were received in evidence and marked exhibits 1 and 2. The blade portion of these articles is approximately 7½ inches in length, the thickest portion being approximately one-eighth of an inch and approximately 1 inch wide. The blade portion of exhibit 1 is tapered down to a dull edge on both sides extending from the point to within approximately 1 inch of the handle. The blade portion of exhibit 2 is similar to the blade portion of exhibit 1, except that it is tapered down to a dull edge on one side only about one-half its length. The handle portion of each exhibit is between 4½ and 5 inches in length, and, as heretofore stated, these handles are of horn. In their present state neither of these articles is capable of doing much cutting. As to whether or not the steel in these articles is of sufficiently high quality to hold a sharp-cutting edge upon being ground, filed, or whetted, we are unable to judge from the exhibits, and the record does not enlighten us upon this point. The inference to be drawn from the record is that the metal in these articles is of a very low quality.

Two witnesses testified for the plaintiff and two for the defendant. The first witness for the plaintiff stated that he had been hunting more than once each year for 50 or 55 years, and that the knives in question are similar to the knives he has seen used in hunting; that they are crudely made knives which he would use as a hunting knife only if he could not get any other; and that he had never seen a knife quite as crude as these used for hunting.

Plaintiff's second witness had served as an enlisted man in the United States Army for 9 years, and as a first lieutenant in the United States military police for 21 months. Based upon his experience with the military forces, he gave his opinion that neither of these exhibits would fall within the designation of sidearms. In response to the question:

Q. Would you say it was similar to a hunting knife?

the witness replied:

A. Well, it is very poor for that, but the idea is it looks very much like it, would pass off for one if you had to have it in an emergency.

The witness also stated that articles such as exhibits 1 and 2 were not issued to the soldiers by the United States Government and that it would not be permissible for soldiers to wear them; that exhibits 1 and 2 were weapons and could be used in offense or defense, and that so far as hunting is concerned, nearly any kind of a knife can be used for hunting, provided it is heavy enough; that these exhibits approximate the size of the commando knives issued to the United States soldiers, and that those commando knives are not sidearms, and that those commando knives would make beautiful hunting knives. Referring to exhibits 1 and 2, the witness testified:

* * * I had one this size I used to use for both hunting and fishing and for opening fish. It was about the same identical thing.

Defendant's first witness stated that he was engaged in the sporting goods business since 1909. When asked to give a general description of the knife he sold for hunting he stated:

Generally, about a 4-inch blade, about an inch and a quarter width, sharpened on one edge, with a handle of approximately 4 inches, encased in a leather sheath. They run from about 4 inches to 8 inches.

He also stated that he never sold an article like exhibits 1 or 2 as a hunting knife. The second witness for the defendant testified that he had sold knives similar to exhibits 1 and 2 as combat knives to soldiers, sailors, servicemen, and marines. In this connection it should be stated that this record shows that the United States Government issued to soldiers, sailors, servicemen, and marines the commando knives, which the record also shows are very expensive knives, being constructed of the very finest steel. The query naturally arises as to why men in the armed forces would spend their own money for a cheap, inferior quality knife, when as a part of their regular equipment these same men could have issued to them free of charge a much superior knife, constructed of the very finest steel.

In the case of *American Express Co.* v. *United States*, 2 Ct. Cust. Appls. 312, our appellate court quoted with approval the following definitions of "side arms":

Standard Dictionary:
Weapons worn at the side, as swords, pistols, bayonets, etc., especially swords.

Webster's Dictionary:
Weapons worn at the side, as sword, bayonet, pistol, etc.

Century Dictionary:
Weapons carried by the side or at the belt, in contradistinction to musket, lance, etc.

Encyclopaedia Britannica:
Side arms are those which, when not in use, are worn at the side, *e. g.*, daggers, swords, bayonets.

It is to be noted that counsel for the defendant in his brief filed herein agrees that:

*An analysis of plaintiff's testimony in this case shows that Exhibits 1 and 2*, representative of the involved merchandise, *are similar to hunting knives in their size and strength*, although both of plaintiff's witnesses readily admitted that they would not use Exhibits 1 and 2 as hunting knives except in case of emergency. [Italics ours.]

The record shows that the reason these witnesses would not use exhibits 1 and 2 as hunting knives was because of their crudeness and poor quality. It is hardly to be supposed that a knife so crudely constructed and of such poor material that one would not use it as a hunting knife, except in case of emergency, would be singled out for use as sidearms with which to protect one's life.

The weight of the evidence in this case shows that the involved merchandise is not sidearms, as that term is used in paragraph 363, Tariff Act of 1930, but is hunting and similar knives, as provided for in paragraph 355, as amended.

We therefore hold all the merchandise in the invoice covered by this case which was assessed with duty at 50 percent ad valorem under paragraph 363, Tariff Act of 1930, except that contained in case No. 2, as to which the protest has been abandoned, to be properly dutiable at only 8 cents each and 25 percent ad valorem under paragraph 355 of the said act, as claimed by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled.

Judgment will be rendered accordingly.